Office of the Attorney General · State of Texas

August 7, 2002

The Honorable Burt Solomons
Interim Chair, House Committee on
    Financial Institutions
Texas House of Representatives
P.O. Box 2910
Austin, Texas 78768-2910

Opinion No. JC-0540

Re:    Whether a bank may use information contained in the magnetic stripe of a driver's license (RQ-0514-JC)

Dear Representative Solomons:

Your predecessor asked this office for an interpretation of section 521.126 of the Transportation Code, which restricts the use of the magnetic stripe information on a Texas driver's license to law enforcement and governmental purposes.[1] He suggested that the recent enactment of the USA Patriot Act of 2001 (the "Act"), Public Law 107-56, and in particular of title 3 of that Act, the International Money Laundering Abatement and Anti-Terrorism Financing Act of 2001, might require a reconsideration of the conclusion of Attorney General Opinion No. JC-0337 (2001) that "[magnetic stripe information] may be used only by law enforcement and other governmental officials." *See* Tex. Att'y Gen. Op. No. JC-0337 (2001) at 1. While that interpretation of section 521.126 has been partially overruled by an amendment to the Alcoholic Beverage Code, *see* TEX. ALCO. BEV. CODE § 109.61 (Vernon Supp. 2002); Tex. Att'y Gen. Op. Nos. JC-0423 (2001), JC-0499 (2002), the "general prohibition against use of driver's license magnetic strips in the Transportation Code," remains in full force and effect. Tex. Att'y Gen. Op. No. JC-0499 at 9. Section 521.126 does not permit bank personnel to use magnetic stripe information. *See* TEX. TRANSP. CODE ANN. § 521.126 (Vernon Supp. 2002). By its terms, the Act does not preempt section 521.126. *See* USA Patriot Act of 2001, Pub. L. No. 107-56, 115 Stat. 272. So far as we have determined, relevant federal regulations under section 326 of the Act, concerning means of identifying customers of financial institutions, have not yet been proposed or published by the United States Secretary of the Treasury as the Act mandates. *See id.* § 326(a)(1)(1). Due diligence requirements have been proposed under section 312 of the Act; but nothing in those requirements would preempt section 521.126 of the Transportation Code. *See id.* § 312(b)(1). It is possible that future federal regulations under section 326 might preempt Texas law. However, at this time they do not do so.

---

[1]Letter from Honorable Kip Averitt, Chair, Committee on Financial Institutions, Texas House of Representatives, to Honorable John Cornyn, Texas Attorney General (Feb. 19, 2002) (on file with Opinion Committee) [hereinafter Request Letter]; Letter from Christopher L. Williston, President and CEO, Independent Bankers Association of Texas, to Honorable Kip Averitt, Chair, Committee on Financial Institutions, Texas House of Representatives (Jan. 7, 2002) (on file with Opinion Committee) [hereinafter Attachment to Request Letter].

Section 521.126 of the Transportation Code reads:

> (a) The department [of Public Safety] may not include any information on a driver's license, commercial driver's license, or identification certificate in an electronically readable form other than the information printed on the license and a physical description of the licensee.

> (b) The department shall take necessary steps to ensure that the information is used only for *law enforcement and governmental purposes*.

> (c) Unauthorized use of the information is a Class A misdemeanor.

TEX. TRANSP. CODE ANN. § 521.126 (Vernon Supp. 2002) (emphasis added).

This office first interpreted this provision in Texas Attorney General Opinion No. JC-0337 (2001). In that opinion, we were asked to consider who might use such magnetic stripe information and for what purpose. The particular basis for the opinion request was a proposed rule by which the Department of Public Safety would have restricted the use of magnetic stripe information to "law enforcement and governmental agency personnel acting in their official capacity." *See* Tex. Att'y Gen. Op. No. JC-0337 (2001) at 2. Attorney General Opinion No. JC-0337, based largely on the legislative history of the provision, concluded that the Department of Public Safety's interpretation of the statute was correct. *See id.* at 5.

The Seventy-seventh Legislature modified the result of Attorney General Opinion No. JC-0337 for the specific purposes of the Alcoholic Beverage Code by the adoption of Alcoholic Beverage Code section 109.61, which provides in relevant part:

> (a) A person may access electronically readable information on a driver's license, commercial driver's license, or identification certificate for the purpose of complying with this code or a rule of the [Alcoholic Beverage] commission, including for the purpose of preventing the person from committing an offense under this code.

TEX. ALCO. BEV. CODE ANN. § 109.61(a) (Vernon Supp. 2002). *See also* Tex. Att'y Gen. Op. Nos. JC-0499 (2002) (state law does not permit private clubs to use or retain electronically readable information to obtain member's driver's license numbers for purpose of creating and maintaining membership lists); JC-0423 (2001) (use of magnetic stripe information to prevent under-age drinking does not violate federal Driver's Privacy Protection Act).

"Consistent with this statutory scheme," Tex. Att'y Gen. Op. No. JC-0499 (2002) at 8, the Department of Public Safety has restricted access to magnetic stripe information by rule:

> Except for purposes of complying with the Texas Alcoholic Beverage Code or a rule adopted by the Texas Alcoholic Beverage Commission, . . . *only law enforcement and government agency personnel acting in their official capacity* can utilize the information provided in this format.

37 TEX. ADMIN. CODE § 15.47(b) (2002). The only exception to the prohibition against private access to electronically readable driver's license information thus has to do with the enforcement of laws and rules regarding alcoholic beverages. Neither section 521.126 nor the Department of Public Safety's rule would permit access to such information by the personnel of private financial institutions.

A bill considered by the Seventy-seventh Legislature, Senate Bill 293, would have limited the scope of section 521.126 by making it an affirmative defense to prosecution under section 521.126 that a person accessing the electronically readable information was an officer or employee of a financial institution transcribing information in the course of a financial transaction, or capturing and maintaining that information in order to comply with federal or state law. However, Senate Bill 293 was not enacted by the legislature. Subject only to the limited exception afforded by section 109.61 of the Alcoholic Beverage Code, section 521.126's prohibition on the use of the information encoded on the magnetic stripe for any but "law enforcement and governmental purposes" by law enforcement and governmental personnel remains in effect.

A letter sent to the attention of your predecessor by the Independent Bankers Association of Texas, however, suggests that a governmental purpose may be presented by the USA Patriot Act of 2001, and in particular by title 3 of the Act, the International Money Laundering Abatement and Anti-Terrorism Financing Act of 2001. *See* Attachment to Request Letter, *supra* note 1, at 1-3. Passed by the Congress in response to the attacks on the United States perpetrated on September 11, 2001, the Act is intended to provide new methods to combat the perils of international terrorism.[2]

Title 3 of the Act finds that "money laundering, and the defects in financial transparency on which money launderers rely, are critical to the financing of global terrorism and the provision of funds for terrorist attacks." USA Patriot Act of 2001 § 302(a)(2). Accordingly, it seeks "to ensure that all appropriate elements of the financial services industry are subject to appropriate requirements to report potential money laundering transactions to proper authorities, and that jurisdictional disputes do not hinder examination of compliance by financial institutions with relevant reporting requirements." *Id.* § 302(b)(11).

---

[2]Press Release, The Department of the Treasury, Office of Public Affairs, Remarks on the Patriot Act of Treasury Under Secretary for Enforcement Jimmy Gurule Before the Bankers Association for Finance and Trade (Mar. 12, 2002), available at http://www.ustreas.gov/press/releases/po1082.htm (last visited May 24, 2002).

Among the new requirements of title 3 of the Act are expanded due diligence requirements for private banking and correspondent bank accounts involving foreign persons and institutions under section 312, and minimum standards for the identification of persons applying to open accounts with financial institutions under section 326. Section 312(a) requires financial institutions that establish, maintain, administer, or manage private banking accounts or correspondent accounts for foreign nationals and banks to "establish appropriate, specific, and, where necessary, enhanced, due diligence policies, procedures, and controls that are reasonably designed to detect and report instances of money laundering through those accounts." *Id.* § 312(a)(1). Subparagraph (a)(2)(B) of section 312 requires banks that maintain correspondent accounts for offshore banks, or banks licensed in countries judged either by the United States to be uncooperative in efforts against money laundering or by the Secretary of the Treasury to warrant special measures because of such concerns, to take enhanced due diligence measures. *See id.* § 312(a)(2)(B). Such procedures require, among other things, that the financial institution take reasonable steps to ascertain the ownership of the foreign bank, to conduct enhanced scrutiny of the account to guard against money laundering, and to find out to which other banks the foreign bank itself may provide correspondent accounts. *See id.* Further, subparagraph (a)(3) requires the financial institution to take steps to ascertain the identity of the nominal and beneficial owners of private banking accounts held by foreign nationals so as to guard against money laundering, and to conduct "enhanced scrutiny" of such accounts maintained by senior foreign political officials, their family members, and close associates. *See id.* § 312(a)(3).

Proposed regulations to implement section 312 were published in the Federal Register by the United States Department of the Treasury and the Financial Crimes Enforcement Network on May 30, 2002. *See* Due Diligence Anti-Money Laundering Programs for Certain Foreign Accounts, 67 Fed. Reg. 37,736-44 (proposed May 30, 2002) (to be codified at 31 C.F.R. pt. 103). Under the proposed regulations, which if adopted will become in relevant part 31 C.F.R. §§ 103.175-.178, financial institutions are required to maintain due diligence programs for correspondent accounts maintained for foreign financial institutions, including "policies, procedures, and controls that are reasonably designed" to allow a financial institution to detect and report money laundering through those accounts. *See* Prop. 31 C.F.R. § 103.176(a). The proposed regulations further require, in certain instances, documentation of any other foreign banks for which the foreign bank in question itself maintains correspondent accounts and the identification of the foreign bank's owners. *See id.* § 103.176(b). They also require financial institutions to take reasonable steps to ascertain the identity of nominal or beneficial owners of the private banking accounts of foreign nationals, to ascertain whether such nominal or beneficial owners include senior foreign political figures, and to take reasonable steps, in such instances, "to detect and report transactions that may involve the proceeds of foreign corruption." *Id.* § 103.178(c)(2). It should be noted that, while both section 312 of the Act and the proposed implementing regulations speak of the necessity for banks to exercise due diligence in the identification of certain persons or entities, neither the statute nor the proposed rules require the presentation or, more significantly, the verification by the bank of driver's licenses for the purpose of such identification, whether through electronically readable information or by any other means.

Section 326 of the Act focuses on requirements of verification of identity. See USA Patriot Act of 2001 § 326. It requires the Secretary of the Treasury to prescribe regulations that will set minimum standards for financial institutions with respect to customer identification in connection with the opening of an account, including reasonable procedures for verifying the identity of any person seeking to open an account, maintaining records of the information used for that purpose, and consulting information provided by any government agency that might identify such a person as a known or suspected terrorist. See id. § 326(a). We are unaware at the time of this writing of any proposed regulations implementing section 326.

The Constitution and laws of the United States are "the supreme Law of the Land . . . any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. CONST. art. VI, cl. 2 (the "Supremacy Clause"). As the Texas Supreme Court explained the preemptive effect of federal law under the Supremacy Clause in 1998:

> A state law is preempted and "without effect" if it conflicts with federal law. A federal law may expressly preempt state law. Additionally, preemption may be implied if the scope of the statute indicates that Congress intended federal law to occupy the field exclusively or when state law actually conflicts with federal law. A state law presents an actual conflict with federal law when "it is impossible for a private party to comply with both state and federal requirements" or where state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress."

Hyundai Motor Co. v. Alvarado, 974 S.W.2d 1, 4 (Tex. 1998) (citations omitted). Federal law, however, does not supersede a state's "historic police powers . . . unless that [is] the clear and manifest purpose of Congress." Id. at 5 (citations omitted).

Nothing in the USA Patriot Act of 2001 of which we are aware expressly requires financial institutions to have the power to access electronically readable information from state-issued driver's licenses. Nor would it be impossible for financial institutions in the exercise even of heightened due diligence to acquire the information about their customers required by title 3 of the Act by means other than such access, although it is certainly possible that such access would be of use to them. If the Secretary of the Treasury were to promulgate regulations implementing section 326 of the Act that required banks to have access to such electronically readable information, then such regulations, which the Secretary is authorized to promulgate under the Act, might preempt section 521.126 of the Transportation Code. However, there are at the present time no such regulations.

# S U M M A R Y

Section 521.126 of the Texas Transportation Code does not permit financial institutions to access magnetic stripe information on Texas driver's licenses. The restrictions on access to magnetic stripe information on Texas driver's licenses under section 521.126 of the Texas Transportation Code are not preempted by the USA Patriot Act of 2001, Pub. L. No. 107-56.

Yours very truly,

JOHN CORNYN
Attorney General of Texas


HOWARD G. BALDWIN, JR.
First Assistant Attorney General

NANCY FULLER
Deputy Attorney General - General Counsel

SUSAN DENMON GUSKY
Chair, Opinion Committee

James E. Tourtelott
Assistant Attorney General, Opinion Committee